# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 7, 2008

Charles R. Fulbruge III
Clerk

No. 06-20026

SILVERCREEK MANAGEMENT INC.;
SILVERCREEK LIMITED PARTNERSHIP;
SILVERCREEK II LIMITED; ONEX INDUSTRIAL PARTNERS LIMITED;
PEBBLE LIMITED PARTNERSHIP,

                                        Plaintiffs-Appellants,

v.

BANC OF AMERICA SECURITIES LLC,

                                        Defendant-Appellee,

v.

REGENTS OF THE UNIVERSITY OF CALIFORNIA,

                                        Plaintiff-Appellee.


*******************************************

SILVERCREEK MANAGEMENT INC.;
SILVERCREEK LIMITED PARTNERSHIP;
SILVERCREEK II LIMITED; ONEX INDUSTRIAL PARTNERS LIMITED;
PEBBLE LIMITED PARTNERSHIP,

                                        Plaintiffs-Appellants,

v.

BANK OF AMERICA CORPORATION,

                                        Defendant-Appellee,

v.

REGENTS OF THE UNIVERSITY OF CALIFORNIA,

                                        Plaintiff-Appellee.

_____

Appeals from the United States District Court
for the Southern District of Texas

_____

Before SMITH and PRADO, Circuit Judges, and LUDLUM, District Judge.[*]
JERRY E. SMITH, Circuit Judge:

Silvercreek Management Inc., Silvercreek Limited Partnership, Silver-creek II Limited, Onex Industrial Partners Limited, and Pebble Limited Part-nership (collectively "Silvercreek") appeal the district court's refusal to extend a class settlement opt-out deadline as to them. We affirm.

---

[*] District Judge of the Western District of Texas, sitting by designation.

I.

Silvercreek sued Banc of America Securities LLC, and Bank of America Corporation (collectively "BOA") in two suits for claims arising out of the collapse of Enron Corporation. Each was consolidated with In re Enron Corp. Securities Litigation, Newby v. Enron Corp., No. H-01-3624. The Regents of the University of California ("Regents") were designated as Lead Plaintiffs.

On January 18, 2005, the Regents filed a motion for preliminary approval of a $69 million settlement with BOA. All notices, motions, and orders were served on Silvercreek and other class members through the electronic Enron securities litigation ("esl") service system.

The district court issued an order on January 20 setting the briefing schedule, which called for objections by January 26 and replies by February 1. The preliminary approval hearing was scheduled for February 4.

Silvercreek and its counsel did not attend the hearing. At the preliminary approval hearing, the court certified a settlement class pursuant to Federal Rule of Civil Procedure 23(b)(3), preliminarily approved the settlement as fair, and issued a preliminary order that provided that class members could object to the settlement by filing a notice of intent to appear at the final approval hearing and that potential class members could opt out of the settlement class by "timely and validly request[ing] exclusion."

The order contained an agreed schedule:

Mailed Notice to be mailed: February 14;
Summary Notice to be published: February 28;
Notices of intent to appear and objections due: March 28;
Final approval hearing: April 11.

The preliminary approval order, which was served on all parties through the esl, did not list the opt-out date, but the court directed the claims administrator to fill in the opt-out date, March 28, in the Mailed and Summary notices. The Summary Notice was to be published in the Investors Business Daily and the

Houston Chronicle, and the Mailed Notice was mailed to each class member for whom the Claims Administrator had records.

The preliminary order, which Silvercreek received, directed that all those "who wish to exclude themselves from the Settlement Class must do so in accordance with the instructions contained in the Mailed Notice;" those "who d[id] not timely and validly request to be excluded" were to be bound by the settlement and any applicable releases. The preliminary order was posted to the esl, and Silvercreek acknowledges receiving it on or around February 4.

The Claims Administrator sent the Mailed Notices and published the Summary Notices in February. The notices explained the opt-out procedures and listed March 28 as the opt-out deadline. The Claims Administrator mailed the notices to various Silvercreek mailing addresses in Toronto, Canada.[1]

On March 28, State Street Bank and Trust filed a notice of intent to appear at the settlement hearing in which it noted "the simultaneous deadlines for returning 'opt out' notices and filing objections to the Settlements." That filing was served on all parties, including Silvercreek, through the esl. Silvercreek did not file an objection or a notice of intent to appear at the final approval hearing by March 28, even though the order it acknowledges it received set that as the deadline for objecting.

On April 4, 2005, the Claims Administrator submitted a declaration regarding the mailing and publication of the notices and attached copies of the final version of the notice with the opt-out date filled in. That document was served on all parties through the esl. On the same day, the Regents filed copies of over two hundred timely opt-out requests, which were also served on Silvercreek through the esl. Four days later, four parties that had filed separate lawsuits withdrew their timely opt-out requests.

---

[1] At oral argument, Silvercreek argued the addresses in the record are not valid United States Postal addresses for Toronto, Canada. It is not necessary for us to reach this issue.

Pursuant to the notices, the district court held the final approval hearing on April 11. Silvercreek did not attend or object in any form. The district court took the motion for final approval under advisement.

On April 25, Silvercreek checked to see whether it had received the Mailed Notice and on April 27 filed an opt-out request and moved to extend the opt-out deadline pursuant to Federal Rule of Civil Procedure 60(b). The district court denied the motion because Silvercreek had not shown excusable neglect. The court entered final judgment and dismissed BOA on October 19.

II.

We review the approval of a class settlement for abuse of discretion. Newby v. Enron Corp., 394 F.3d 296, 308 (5th Cir. 2004). The same standard applies to an appeal from a rule 60(b) motion. Edward H. Bohlin Co. v. Banning Co., 6 F.3d 350, 353 (5th Cir. 1993).

To determine whether Silvercreek should have had more time to opt out on the basis of excusable neglect, we apply the so-called Pioneer factors. La. Dep't of Envtl. Quality v. Crystal Oil Co. (In re Crystal Oil Co.), 158 F.3d 291, 298 (5th Cir. 1998). Under Pioneer Investment Services Co. v. Brunswick Associates L.P., 507 U.S. 380, 395 (1993), the court is to consider prejudice to the opposing party, length of the delay, and reason for the delay in determining whether the claimant's neglect was excusable and the delay was made in good faith. Silvercreek incorrectly contends that the district court must rigorously apply each of these factors in every case.

A court may hold a party accountable for the acts and omissions of its counsel. Id. at 396-97. In Halicki v. Louisiana Casino Cruises, Inc., 151 F.3d 465, 470 (5th Cir. 1998), we held that counsel's failure to file a Federal Rule of Civil Procedure 4(a)(1) notice of appeal on time was not excusable neglect. The only other Pioneer factor we mentioned was whether the opposing party would

be prejudiced.  Halicki stands for the proposition that if counsel's behavior so thoroughly falls below a certain threshold, a district court's determination regarding excusable neglect will not be disturbed if the court has considered the moving party's proffered evidence.  Id. at 469.

This case presents a prime example of such conduct.  There is no doubt that Silvercreek's counsel received the preliminary order through the esl website and should have noticed the blank space for the opt-out date.  Counsel also should have noticed that the final approval hearing would take place on April 4 and should have inferred that the opt-out date had to be before then.

Even if they could not guess what that date would be, counsel could have inquired of the court or other counsel as to the opt-out date.  Moreover, because other filings on the esl website explicitly mention the opt-out date, Silvercreek's counsel was on notice of that date.  The district court did not abuse its discretion in refusing to extend the opt-out date, because it considered Silvercreek's proffered evidence and determined that counsel's performance fell below the threshold required for neglect to be excusable.

### III.

Silvercreek urges that the notice procedures implemented by the district court were inadequate to satisfy due process requirements as to foreign investors.  BOA and the Regents reply that Silvercreek has waived its due process argument because it did not press it in the district court.  We agree.

Failure to raise a due process objection in the district court waives that objection on appeal.  Newby, 394 F.3d at 309.  "Litigants must allege constitutional violations with 'factual detail and particularity.'"  Id.  Silvercreek did not do so with respect to its due process claims.[2]

---

[2] In all fairness to Silvercreek, its brief in the district court did contain the term "due
(continued...)

In the district court, Silvercreek's argument was that the opt-out period was too short for it to exercise that right effectively. On appeal, however, it claims that the notices were deficient as a matter of due process because they were not designed to reach foreign class members effectively. These are different arguments, so the issue is waived.

AFFIRMED.

---

[2] (...continued)
process," but "due process" is not a magic phrase that preserves every permutation of an argument.